UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 3:06-CR-66 |
| | ) | 3:06-CR-67 |
| SONYA SMITH, | ) | |
| | ) | |
| Defendant. | ) | |

### *MEMORANDUM AND ORDER*

Defendant Sonya Smith ("Smith") was arrested on June 21, 2006, after Indictments were returned by a grand jury in this district in 3:06-CR-66 and 3:06-CR-67. Smith is charged in Counts One (1) and Two (2) of the Indictment in 3:06-CR-66. Count 1 charges a violation of 18 U.S.C. §§ 1344 and 2, Bank Fraud and Aiding and Abetting. Count 2 charges a violation of 18 U.S.C. §§ 1028A and 2, Fraud with Identification Documents and Aiding and Abetting. Smith is charged in Counts Three (3) and Four (4) of the Indictment in 3:06-CR-67. Count 3 charges a violation of 18 U.S.C. §§ 1344 and 2, Bank Fraud and Aiding and Abetting. Count 4 charges a violation of 18 U.S.C. §§ 1028A and 2, Fraud with Identification Documents and Aiding and Abetting.

Magistrate Judge Nuechterlein held a detention hearing on June 26, 2006, in South Bend, Indiana. Magistrate Judge Nuechterlein concluded that no condition or combination of conditions of release will reasonably assure the appearance of the Defendant as required. Magistrate Judge Nuechterlein based his conclusion on the findings and analysis of the matters enumerated in 21 U.S.C. § 841(a)(1) as stated on the record in open court at the

detention hearing. This Court held a detention review hearing on July 19, 2006 in South Bend, Indiana.

## STANDARD OF REVIEW

When reviewing a magistrate judge's detention order under 18 U.S.C. §3145(b), this Court must reach its own independent conclusions. *U.S. v. Bergner*, 800 F.Supp. 659 (N.D. Ind. 1992). In this regard, this Court must conduct what is substantially a *de novo* review and need not defer to the magistrate's findings. *U.S. v. Levine,* 770 F.Supp. 460 (N.D. Ind. 1991)*; see also U.S. v. Portes*, 786 F.2d 758, 761 (7th Cir. 1985). Concerning the evidentiary basis for this Court's ruling, it is within this Court's discretion to hear evidence additional to that heard by Magistrate Judge Nuechterlein. *See U.S. v. Messino*, 842 F. Supp. 1107, 1109 (N.D. Ill. 1994); *Levine*, 770 F. Supp. at 464 n.7. Alternatively, this Court may rely on the transcript of the hearing below as its source of evidence, a procedure that serves "judicial economy and speeding determination." *Messino, id.*, *U.S. v. Allen*, 605 F.Supp. 804, 867 (W.D. Pa. 1985); *see also U.S. v. Torres*, 929 F.2d 291 (7th Cir. 1991). Evidence was presented to this Court at the July 19, 2006 detention review hearing in the form of a sworn witness for the government and statements proffered to this Court by the Smith's attorney, Donald J. Berger. This evidence and these statements serve as the evidentiary basis for this Court's decision.

## ANALYSIS

Title 18 of the U.S. Code, §§ 3142(a) and (e) authorize a district court to order that, pending trial, a person charged with an offense be detained. The Court may order detention

2

pending trial if the following finding is made: "That no condition or combination of conditions will reasonably assure the appearance of the person as required (serious risk of flight) and the safety of any other person and the community." 18 U.S.C. §3142(e); *United States v. Diaz,* 777 F.2d 1236 (7th Cir. 1985). Defendant can be detained *either* upon a showing of dangerousness, or upon a showing of risk of flight, and the Government need not establish both. *United States v. Portes*, 786 F.2d 758, 765 (7th Cir. 1985). This Memorandum and Order addresses the degree of danger to the community or to an individual and the risk of flight posed by Defendant.

A finding that Defendant is a danger to the community must be supported by clear and convincing evidence. 18 U.S.C. § 3142(f)(2)(B). Clear and convincing evidence is something more than proof by a preponderance of the evidence but less than proof beyond a reasonable doubt. *Addington v. Texas*, 441 U.S. 418, 425, 99 S. Ct. 1804 (1979). "Danger" in this context currently means more than a literal physical threat. It includes the likelihood that the accused will engage in criminal activity, including non-violent criminal activity if released. *See* S.Rep. No. 225, 98th Cong., 2d Sess., 3 (1984), reprinted in 1984 U.S. Code Cong. & Admin. News 3182, 3184-85; *see also*, *United States v. King*, 849 F.2d 485, 487 n.2 (11th Cir. 1988).[1] The Government must establish risk of flight by a preponderance of evidence. 18 U.S.C. §3142(f); *Messino*, 842 F. Supp. 1110. The Seventh Circuit has determined the standard for other factors, including risk of flight, by the

---

[1]The Seventh Circuit has determined that the standard on the other factors, including risk of flight, by the statute's silence, is the traditional preponderance of the evidence standard. *United States v. Portes*, 786 F.2d 758 (7th Cir. 1985).

3

statute's silence, and that standard is the traditional preponderance of the evidence standard.[2]  *Portes*, 786 F.2d 758.

The Bail Reform Act specifies factors the Court is to consider in making the detention decision.[3]  Those factors include:

>   (1) the nature and seriousness of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;
>
>   (2) the substantiality of the government's evidence against Defendant;
>
>   (3) Defendant's background and characteristics, including:
>
>   >   (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings, and
>   >
>   >   (B) whether, at the time of the current offense or arrest, the person was on parole, probation or other release pending trial, sentencing, appeal or completion of sentence for an offense under Federal, State or local law; and
>
>   (4) the nature and seriousness of the danger posed by his release.

18 U.S.C. § 3142(g); *Messino,* 842 F. Supp. *1110; Bergner*, 800 F. Supp. 659; *United States v. Bennett*, 731 F. Supp. 907 (S.D. Ill. 1990).

In this case, Defendant is charged with a total of two counts of Bank Fraud and

---

[2] The mere opportunity to flee is not enough to justify detention. *U.S. v. Hammond*, 204 F.Supp.2d 1157, 1165 (E.D. Wis. 2002); *U.S. v. Chen,* 820 F. Supp.1205, 1208 (N.D. Cal. 1992).

[3] The Bail Reform Act of 1984 was sustained as an appropriate regulatory device to assure the safety of persons in the community and to protect against the risk of flight.  The Supreme Court has upheld the substantive right to detain based upon the Government's meeting the burden required by the statute. *See U.S. v. Montalvo-Murillo*, 495 U.S. 711, 718, 110 S. Ct. 2072, 2078 (1990); *citing U.S. v. Salerno*, 481 U.S. 739, 107 S. Ct. 2095 (1987).

Aiding and Abetting, pursuant to 18 U.S.C. §§ 1344 and 2, and two counts of Fraud with Identification Documents and Aiding and Abetting, pursuant to 18 U.S.C. §§ 1028A and 2. The Court must and does assess Defendant's application for review using the four factors listed above.

Factor One: The nature and seriousness of the charges

Defendant faces serious charges. She is charged with violations of 18 U.S.C. §§ 1344 and 2 and 18 U.S.C. §§ 1028A and 2.  Count 1 of 3:06-CR-66 carries a maximum possible penalty of zero (0) - thirty (30) years imprisonment, five (5) years of supervised release, a $1,000,000 fine and a special assessment of $100.00 if Defendant is found convicted.  Count 2 of 3:06-CR-66 carries a mandatory consecutive term of two (2) years imprisonment, three (3) years of supervised release, a $250,000 fine, and a special assessment of $100.00 if Defendant is convicted.  Count 3 of 3:06-CR-67 carries a maximum possible penalty of zero (0) - thirty (30) years imprisonment, five (5) years of supervised release, a $1,000,000 fine and a special assessment of $100.00 if Defendant is found convicted.  Count 4 of 3:06-CR-67 carries a mandatory consecutive term of two (2) years imprisonment, three (3) years of supervised release, a $250,000 fine, and a special assessment of $100.00 if Defendant is convicted.  These are the statutory penalties. Additionally, under the U.S. Sentencing Guidelines, Smith could face a substantial prison term given the nature of the offenses and the nature and extent of her criminal history.  This criminal history now includes a recent felony conviction in cause number 3:04-CR-97.

Factor Two: The substantiality of the Government's evidence

The weight of the Government's evidence favors detention.  The Government has evidence that Smith participated in an extensive fraud scheme while on pretrial release in 3:04-CR-97. In that case, the Defendant pleaded guilty to a violation of 18 U.S.C. § 371 and 2, Conspiracy to Defraud the United States.[4]

Officer Dominick Zultanski ("Zultanski") from the South Bend Police Department testified at the July 19, 2006 detention review hearing.  He testified as to the nature of the bank fraud scheme involved 3:06-CR-66 and 3:06-CR-67.  Zultanski stated that the fraud scheme involved several members in the St. Joseph County, Indiana Jail.  According to Zultanski, co-defendant Melvin Fagan ("Fagan") would look through the obituaries in the newspaper and select elderly individuals who were recently widowed or widowered.  Zultanski testified that Fagan then recruited fellow inmates to contact family members outside of prison via telephone, and those inmates recruited their family members to contact the elderly victims to obtain personal and credit card information.  Allegedly, Fagan and his co-defendants would then obtain credit cards in the victims' names and in the names of accomplices; those credit cards were used to make large purchases and to obtain cash advances.

Smith is charged in Counts 1 and 2 of the Indictment in 3:06-CR-66.  These counts allege that Fagan contacted C.M.'s surviving spouse, D.M., by telephone and obtained the

---

[4] On June 7, 2006, the Defendant was sentenced to twelve (12) months and one (1) day imprisonment to be followed by two (2) years of supervised release.

Discover card account number that D.M. and his wife shared jointly, and their personal identifying information. Zultanski testified that Fagan thereafter obtained a Discover card in co-defendant Laura Fitzsimmons's ("Fitzsimmons") name on C.M's account and that Smith drove Fitzsimmons to the bank to obtain a $7,000 cash advance.

Zultanski testified that Fitzsimmons was to receive $2,000 of that $7,000 cash advance and that Smith was to distribute the remaining $5,000 among the other co-defendants. Zultanski also testified that an altercation occurred between Smith, Fitzsimmons, and another individual whom Zultanski did not identify, in which Fitzsimmons was injured. Zultanski testified that Smith did not want Fitzsimmons to get her $2,000 "cut" of the cash advance. Zultanski stated that there is evidence in the form of recorded phone conversations between Fitzsimmons, Robert Smith (Sonya Smith's brother who is incarcerated), Sonya Smith, Fagan, and other co-defendants regarding the altercation. Zultanski also stated that there are sworn statements corroborating the charges contained in Counts 1 and 2 of the Indictment in 3:06-CR-66.

Smith is charged in Counts 3 and 4 of the Indictment in 3:06-CR-67. These counts charge that Fagan obtained the name of B.W. from the obituary page of the South Bend Tribune and contacted B.W.'s spouse, P.W. by telephone.[5] The Indictment alleges that Fagan obtained P.W.'s Discover card number and personal identifying information, and Fagan, Latasha Cross, Barbara Henderson, Sonya Smith, and Kimberlee Garcia used the

---

[5] On cross-examination, Zultanski testified that he has suggested certain controls to be placed on Fagan while in custody and that he believes Fagan is limited to 1 hour of phone time a day.

credit card and personal identifying information to purchase Gateway Computers.

Zultanski testified that Smith and other co-defendants waited at a drop house for the delivery of the Gateway Computers. He testified that the police and Fed Ex became aware of this fraud prior to delivery and that a controlled delivery was arranged. Zultanski testified that when the Gateway Computers were delivered, he was in the back of the Fed Ex truck. He testified that Sonya Smith signed for the computers, and after driving off, officers stopped Smith. Zultanski testified that Smith stated she was there to pick up computers for P.W. Zultanski testified that Smith signed a name other than P.W.'s name to accept delivery. Zultanski stated that the evidence consists of taped phone conversations between Fagan and Smith in which Smith is given detailed instructions on how to accept delivery of the computers. Zultanski also testified that there are sworn statements corroborating the charges contained in Counts 3 and 4 of the Indictment in 3:06-CR-67.

Finally, Zultanski testified that he was involved in the investigation of the prior case–3:04-CR-97–and that Sonya Smith, Robert Smith, and Melvin Fagan are the only defendants who were charged in 3:04-CR-97 who are also charged in 3:06-CR-66 and 3:06-CR-67.[6]

### Factor Three: Defendant's background and characteristics

---

[6] 3:04-CR-97 charged the following defendants: Shanon M. Ochoa, Robyn Drudge, Telly Gant, Robert Smith, Melvin Fagan, Deja Walker, Sonia Smith, Jason Wickizer, Lisa Stephens, Kiyaka Lark, Samantha Burton, and Tammy Rose.
   3:06-CR-66 charges the following defendants: Melvin Fagan, Latasha Cross, Laura Fitzsimmons, Frankie Barber, Jerome Stenson, Tracy Williams, William Davis, and Sonya Smith.
   3:06-CR-67 charges the following defendants: Melvin Fagan, Bryant Smith, Latasha Cross, Barbara Henderson, Sonya Smith, and Kimberlee Garcia.

The Court can consider a variety of items in its evaluation of Defendant's history and characteristics.[7] This Court has reviewed a history of the Defendant's prior arrests. The offenses charged in those arrests include, but are not limited to the following: a conviction in 1993 for Criminal Trespass (Cause No. 71D01-9302-CM-807), a conviction in 2001 for Driving While Suspended and Seat Belt Violation (Case No. 71D01-0108-IF-21916), a conviction in this Court in 2004 for Conspiracy to Commit Fraud (felony) (Cause No. 3:04-CR-97), a conviction in 2005 for Driving While Suspended (Cause No. 71D01-0503-CM-2591), and a conviction in 2005 for Attempted Theft (Cause No. 71D02-0508-FD-802).

The Defendant's arrest in these cases (3:06-CR-66 and 3:06-CR-67) arose from conduct that allegedly occurred while Smith was on pretrial release as ordered by this Court in 3:04-CR-97. The Defendant has a significant criminal history and her alleged inability to conform to pretrial release is of concern to this court. The Defendant's attorney argued at the detention review hearing that Smith does not pose a flight risk and that she had attended every court hearing required. However, it is the view of this Court that the gravity of the present charges may prompt Smith to flee the jurisdiction of this Court and escape the consequences that potentially await her.

Defendant also argues that she has family which includes five children. At the

---

[7] According to 18 U.S.C. 3142(g)(3)(A), the Court may assess: the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug and alcohol abuse, criminal history, and record concerning appearance at court proceedings.

detention review hearing, the Defendant's attorney stated that Smith has ties to her family and her community and that she needs the six weeks between now and her September 5, 2006 reporting date [in 3:04-CR-97] to put her family in the situation it needs in order to be prepared for her absence in the next year.

As has been stated in numerous cases–civil and criminal–the record speaks for itself. Defendant's record makes apparent that Defendant has no respect for the law nor the courts that enforce the laws. The Government has more than met its burden of proof (a preponderance of the evidence) that Defendant represents a flight risk and there is no way reasonably to guarantee her appearance at future court proceedings.

<u>Factor Four: The nature and seriousness of the danger posed by her release</u>

Cognizant of the Government's heightened burden on this issue, the Court here looks for clear and convincing evidence regarding the nature posed by Defendant's release. Again, Defendant's record speaks for itself in terms of the danger she poses. Based on the fact that the Defendant has a federal felony conviction for Conspiracy to Defraud the United States and state court conviction for Attempted Theft, this Court finds that the Defendant has a significant criminal history.  The Defendant was on pretrial release when she allegedly committed these offenses. Additionally, Zultanski testified that Fagan made Smith fully aware of how he operated this scheme and that there is nothing to prevent Smith from continuing this type of fraud scheme.[8]

---

[8] This Court is not convinced by Defendant's argument that, because certain controls have been placed on Fagan's access to telephones while incarcerated, Smith would not be able to continue the scheme on her own without Fagan's assistance.

10

For purposes of detention, the Government has met its burden regarding the danger Defendant poses. Despite Defendant's assumption of the responsibilities of a home and children, she obviously has not seen fit to conform her behavior to the requirements of the law. In this regard, this Court will assist Defendant in that endeavor by detaining her until trial.

## CONCLUSION

Ths ultimate determination that a district judge is required to make–whether it is reasonably certain that a Defendant will appear for trial if admitted to bail and whether, even if so, she can be left at large without endangering the safety of other persons–depends both on personal observation of Defendant and on weighing of the factors listed above. 18 U.S.C. § 3142(e-g), *Diaz*, 777 F.2d 1236. There is no reason for this Court to believe that the Defendant will appear at future court proceedings as ordered or that the safety of the community will be ensured if Defendant is released. This decision is made after having weighed the factors with close consideration paid to the evidence presented by the parties at the detention review hearing. In short, the Court finds pre-trial detention is warranted in this case. Defendant will remain in custody pending trial.

**SO ORDERED**.

**Dated: July 20 , 2006**

                                        **S/ ALLEN SHARP**
                                        **ALLEN SHARP, JUDGE**
                                        **UNITED STATES DISTRICT COURT**